*850 OPINION.
TRAmmell:
In the redetermination of the deficiencies due effect will be given the stipulation of the parties with respect to issues 1 and 4 referred to in the preliminary statement. Issues 2, 3, 5 and 0 having been abandoned by the petitioner, the action of the respondent -with respect thereto is affirmed. This leaves as the sole question to be decided whether the petitioner is entitled to have its tax assessed under the provisions of section 328 of the Revenue Acts of 1918 and 1921. In this respect the petitioner contends that invested capital can not be determined because it is impossible to determine the value of assets paid in for stock at the time of the organization of the corporation in 1907, and thus the petitioner comes within section 327 (c). The respondent apparently determined the invested capital by allowing the par value of the stock with adjustment for earned surplus to be considered in the taxable year.
The formula adopted by the petitioner, that is, capital stock and earned surplus, is manifestly not in accordance with the statute which requires that the cash value of tangible property paid in for stock and the cash value of intangibles paid in for stock subject to certain limitations, should be included. If, however, by the method which the Commissioner used he has in fact satisfactorily determined invested capital and that determination, regardless of the formula or method used is not shown to be erroneous and in fact is the same as if the Commissioner had used other and more appropriate terminology in stating how he determined invested capital, and it further appears that he has given the taxpayer the benefit of all invested capital it could under any circumstances be entitled to by the application of section 326, in our opinion, this would not bring the case within section 327 (c).
In 1907 about the time of the organization of the corporation, stock to the extent of $100,000 par value was sold for cash at par. This would indicate that certainly the corporation had no capital *851 or assets at that time which were not capitalized. It seems clear that if the assets had exceeded the par value stock would not have been sold for cash at par at approximately that time, and the fact that stock sold for cash at par would indicate that the value of assets was fairly represented by the par value of the stock. From all the record discloses the sale of this stock for cash was an arm’s-length transaction and represented the actual value of the stock.
It may well be that the petitioner had developed in the course of its long business career prior to 1907 a substantial amount of good will, but this evidently was reflected in the value of the stock which was sold for cash and this sale was at par.
There is evidence that at the time of the organization of the corporation certain patents were acquired. If these patents had materially increased the value of assets, they undoubtedly would have been reflected in the sales price of stock for cash in 1907. It may well be that the Commissioner did actually determine the value of assets paid in for stock in 1907. It is not shown that he did not. He may have considered the stock sales as fixing the values of assets. We think, in the absence of explanation or evidence to the contrary, that it does. Certainly, there is no evidence to show that the invested capital should be greater than that determined by the Commissioner or that any values- have in fact been omitted. We also think that the stock sale to Nutt in 1917 at book value of assets, indicates that the corporation did not have any substantial values in its assets not capitalized. This fact also has application to assets acquired since organization. We do not think that so far as the assets turned in for stock at the time of the organization of the corporation are concerned, any ground is shown to bring this case within section 327 (c).
Another ground assigned for special assessment is that certain employees, two in number, invented, developed and patented a moulding machine. The expenses incident to this invention from 1914 to 1916 were paid by the petitioner and charged to profit and loss and it is now impossible to ascertain the amount of those expenditures. This moulding machine had valuable advantages over other makes of moulding machines. It facilitated the production and reduced the cost thereof. These machines are still in use by the petitioner. The machines were manufactured by the corporation for its own use, but they were also sold to competitors and others who desired them. The petitioner made profits on the sale of these machines in 1919 of approximately $3,500; in 1920 of approximately $16,000; in 1921 of approximately $7,000. These profits from an uncapitalized asset are not shown to have been such a proportionate part of the total income as to amount to an abnormality of *852 income. The expenditures are not shown to have been of such a substantial amount as to constitute an abnormality of capital. Nor do we think that the use of the machine itself created an abnormality. The value of these machines is not shown, or even the approximate value. Competitors and others had the right to purchase the machines if they had seen fit to use them in their own businesses, and having this right, the petitioner by the use thereof would not have an abnormal advantage over its competitors. An abnormal situation, therefore, respecting capital is not shown by the exclusion of this patent from invested capital.
The question is, is the inability to compute the amount of expenditures made by the petitioner in acquiring its patents, including the moulding machine, or the use thereof, sufficient to bring the petitioner within the provisions of section 327 on the ground that invested capital could not be determined. There were only two men working on this machine and the invention and the record does not disclose even approximately the amount of expenditures in connection therewith. If it was only a small amount, relatively speaking, we do not think it would be sufficient. We think that the provisions relating to the inability to determine invested capital must be read in the light of reason and the failure to determine the amount of the cost of some asset, if that cost is small and does not materially affect income or capital, special assessment would not be authorized. For instance, if certain office furniture were made by employees and charged to expense, if the expenditure in any event was a very small amount, the fact that the exact amount could not be determined would not entitle the petitioner to special relief. On the other hand, it is to be observed that the petitioner apparently paid royalties to its employees for the use of the moulding patent. There is no evidence that the patents were assigned to the petitioner or that they belonged to the petitioner by virtue of the payment of labor and material incident to the invention and development thereof. It is to be observed also that the principal sales factor during the taxable years was the ability to make delivery of goods. There was great demand and a small supply. This factor may have entered very largely into the large profits made.
Another factor which is claimed to be the basis for assessing the tax under section 328 is the fact that during the taxable years there was accumulated stock to the extent of from 250 to 350 tons of saddlery hardware that had been considered obsolete in previous jears which had not been included in capital and was sold at good prices. We do not know to what extent any of this hardware was sold during the taxable years nor the price at which sold. It appears *853 that this accumulation of saddlery hardware began to be sold in 1917 on account of war conditions and demands. Since this property began to be sold in the beginning of 1917, we do not know what quantity of it was sold in 1917 or in 1918 prior to the beginning of the fiscal year 1918. It may well be, for all the record discloses, that most of these goods were sold in 1917 when the unusual demand arose or in the fiscal year before us, but we do not know whether the sales were substantial in amount or how these sales compared in income received with the total income received from other sources. We would not be warranted, therefore, in holding that this transaction created an abnormal condition of income or capital.
Another 'ground for special assessment was the contention that the officers’ salaries were low during the taxable years. The compensation of the officers is set out in our findings of fact. We are unable to determine that this factor was such as to abnormally affect the income for these years;
For the foregoing reasons it is our opinion that the evidence does not disclose that the petitioner has brought itself under any of the provisions of section 327 and therefore is not entitled to have its profits tax assessed under the provisions of section 328.

Judgment will he entered under Rule 50.